**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **MAG. No. 2:26-mj-01666-MPK** |
| **v.** | : | |
| | : | **(EDPA Criminal No. 26-cr-492)** |
| **CODY NOROSKI** | : | |

**GOVERNMENT'S MOTION FOR PRETRIAL DETENTION**

The United States of America, by and through by its attorneys, Troy Rivetti, United States Attorney for the Western District of Pennsylvania, and Adam J. Barr, Assistant United States Attorney for said District, hereby moves this Honorable Court to detain the defendant prior to trial because there are no conditions or combination of conditions that can reasonably assure the safety of the community or mitigate the defendant's risk of flight.

Over several weeks in September 2024, the defendant engaged in sexually explicit communications with a 14-year-old child ("Minor 1") via text messaging. Throughout these text messages, the defendant solicited child sexual abuse material ("CSAM"), or child pornography, from the child, directed the child to produce CSAM, discussed the sex acts that he wanted to commit against the child, and developed a plan to travel more than 300 miles to meet the child for sex. On September 13, 2024, the defendant carried out his plan to meet the child victim, driving across the state of Pennsylvania to pick the child up near her home in Delaware County, Pennsylvania, in the Eastern District of Pennsylvania. The defendant then transported the child in his personal vehicle across state lines to the State of Delaware, took the child to a mall where he bought her lingerie, and then checked them into a Days Inn Hotel in Wilmington, Delaware. At the hotel, the defendant engaged in oral sex with Minor 1 and attempted anal sex with the child. Later, after learning that the Minor 1's guardians may take her phone away, the defendant

encouraged the child to delete and destroy evidence of their communications and the sexually explicit images they exchanged.

The crimes with which the defendant is charged all carry a presumption that no condition or combination of conditions will reasonably assure his appearance as required and/or the safety of the community, and the government moves pursuant to 18 U.S.C. §§ 3142(e) and (f)(1)(E) for a detention hearing and pretrial detention of the defendant. The defendant is charged in an Indictment in the Eastern District of Pennsylvania (EDPA), where he has no community ties. The defendant's lack of community ties to EDPA significantly increases his risk of flight. If convicted of these crimes, the defendant faces a mandatory minimum sentence of 15 years' imprisonment, up to a possible life sentence. For all these reasons, and the reasons outlined below, the defendant is unable to rebut the statutory presumption that no combination of conditions will ensure his appearance for trial or the safety of the community, and he should be detained.

The Government notes that this Motion is intended to be an overview of the Government's request for detention, as opposed to a comprehensive recitation of its case and legal arguments. The Government reserves the right to supplement this Motion and the facts and argument contained herein with additional facts and argument presented at the defendant's forthcoming detention hearing.

## A. FACTS

In support of this motion, the government makes the following representations and proposed findings of fact:

### 1. Probable Cause and The Evidence in this Case

There is probable cause to believe, based on the Indictment issued by the federal grand jury in EDPA on September 30, 2026, that the defendant has committed the offenses of use of an

interstate commerce facility to entice and attempt to entice a minor to engage in sexual conduct, in violation of 18 U.S.C. § 2422(b), receipt and manufacture of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2251(a), and transportation of a minor with intent to engage in sexual activity, in violation of 18 U.S.C. § 2423(a). As a result, there is a rebuttable presumption, pursuant to 18 U.S.C. § 3142(e)(3)(E), that no condition or combination of conditions will assure the safety of the community and the defendant's appearance in court.

The evidence in this case is strong. After Minor 1's father and grandmother learned of the child's sexually explicit communications, they made a local police report on September 21, 2024. At that time, they turned over the child's cell phone to law enforcement and consented to a search of the device. Local law enforcement turned over an extraction of the device to FBI Philadelphia in May of 2026.

In reviewing the phone extraction, FBI Philadelphia located a lengthy text message conversation between Minor 1 and a phone number saved in the child's phone as "Cody." This conversation contained more than 2,000 messages throughout September 2024. In response to an administrative subpoena, Verizon confirmed that "Cody's" phone number has been subscribed to the defendant, Cody Noroski, at his residence in Freeport, Pennsylvania since at least as early as September 1, 2024. During the communications, the defendant also sent the child selfie-style photos of himself, in which he is readily identifiable.

Throughout the text message exchange, the defendant solicited CSAM from Minor 1[1] and discussed the sexual acts he wanted to commit against the child. For example:

---

[1] Minor 1 is a transgender child who was born biologically male. Minor 1 was beginning to transition from male to female in 2024 by presenting as female in clothing and appearance and by taking black market puberty blockers and estrogen hormones, which resulted in breast development. In addition to exploiting Minor 1's vulnerable age, the defendant manipulated the child by discussing his acceptance of the child's transgender identity with her and presenting

- On September 6, 2024, the defendant asked the child, "Do you wanna fuck me too?," and proceeded to discuss how neither the defendant nor Minor 1 had ever received anal sex. They also discussed Minor 1 performing oral sex on the defendant and engaging in a "69."

- On September 9, 2024, the defendant directed Minor 1 to produced CSAM, encouraging the child to photograph their penis and "put a ruler beside it," or measure it against a "can," a "water bottle," or a "deodorant." The defendant then sent Minor 1 an image of his own erect penis next to a Monster energy drink can and told the child, "You could do it soft then hard for your man. Looking at mine for motivation."

In total, the defendant recent at least nine images and one video depicting CSAM of Minor 1.

In forensic interviews with Minor 1, Minor 1 reported that, after talking via text message and phone calls for a few weeks, "Cody" (the defendant) traveled to meet Minor 1. The defendant drove Minor 1 to a mall in the state of Delaware and bought the child lingerie. In the mall parking lot, Minor 1 touched the defendant's penis and performed oral sex on him. Afterwards, they went to the hotel, where the defendant performed oral sex on Minor 1 and attempted to have anal sex with Minor 1. The defendant then ejaculated on the child's face. They showered together, and then the defendant drove Minor 1 home.

The defendant's September 13, 2024 hotel stay with the child is corroborated by a hotel receipt containing a photocopy of the defendant's driver's license. The trip from Minor 1's residence to the hotel is also corroborated by GPS location data from Minor 1's phone. Photographs depicting Minor 1 and the defendant posing nude together in the hotel bathroom from the same date were also recovered from the child's phone. In some of those photos, the pink lingerie set that the defendant purchased for the child is visible on the bathroom counter. Local law enforcement later recovered the lingerie set from Minor 1's residence. Afterwards, via text

---

himself as someone who might provide financial support for her female hormones if their "relationship" became "serious."

message, the defendant and Minor 1 discussed the lingerie that the defendant bought for the child. They also discussed their attempt at anal sex, and the child's surprise at how the defendant's penis was too big to complete the act.

In Minor 1's forensic interviews, the child reported telling the defendant her true age of 14 at the outset of the communications via phone call. This is corroborated by the call log from Minor 1's phone, which shows a 14-minute-long phone call from the defendant to Minor 1 on their first day of communication immediately after Minor 1 texted, "[I don't know] idk if you would be ok with my age lol." Other text messages also demonstrate that the defendant clearly knew the child was a minor before soliciting CSAM from Minor 1 and before meeting Minor 1 and transporting the child across state lines to a hotel to have sex. Throughout their messages, the defendant and Minor 1 discussed Minor 1's homework, favorite school subject, the fact that Minor 1 was not old enough to drive, and the fact that Minor 1's guardian had to approve the child's medical treatment. On September 10, 2024, Minor 1 told the defendant, "I thought the age thing would have scared you away," to which the defendant responded, "Maybe I'm dumb lol." In the lead up to their in-person meeting on September 13, 2024, they engaged in the following exchange:

| | |
|---|---|
| **NOROSKI 9/13/2024 7:39 AM:** | I'm still super nervous haha |
| **MV 9/13/2024 7:39 AM:** | You can't be more nervous than I am lol |
| **NOROSKI 9/13/2024 7:40 AM:** | Haha how do you figure |
| **MV 9/13/2024 7:40 AM:** | I'm gonna get into a car with a 38 year old man that I've only ever talked to on the phone |
| **NOROSKI 9/13/2024 7:42 AM:** | Haha well I could get in trouble too |
| **MV 9/13/2024 7:44 AM:** | Yeah true lol<br>Well don't be nervous cause everything will be fine |
| **NOROSKI 9/13/2024 7:44 AM:** | Haha well thats kinda what I'm freaking out about now |

haha

…

| | |
|---|---|
| **NOROSKI 9/13/2024 8:51 AM:** | So does anyone really know about us? |
| **MV 9/13/2024 8:55 AM:** | Two of my friends. But I made it seem like you were some guy I had a crush on and I didn't tell them your age so they don't really know |
| **NOROSKI 9/13/2024 9:00 AM:** | That's good |
| **NOROSKI 9/13/2024 9:01 AM:** | And there's no way we can get caught? |

Demonstrating his consciousness of guilt and willingness to engage in obstruction, the defendant also encouraged Minor 1 to destroy evidence after learning that the child's caretakers had discovered Minor 1's activities. On September 21, 2024, about 90 minutes before Minor 1's grandmother and father took the child to the local police department, Minor 1 warned the defendant that she may be getting in trouble and that her phone may be taken away. The defendant responded:

| | |
|---|---|
| **NOROSKI 9/21/2024 3:07 PM:** | Why?<br>Make sure you delete pics baby |
| **MV 9/21/2024 3:07 PM:** | I don't wanna talk about it |
| **MV 9/21/2024 3:08 PM:** | I'm in serious trouble<br>We may not be able to talk for a bit |
| **NOROSKI 9/21/2024 3:08 PM:** | Well make sure you delete stuff ok |
| **MV 9/21/2024 3:08 PM:** | Don't worry I'm not telling my family my password but they might take my phone away |
| **NOROSKI 9/21/2024 3:09 PM:** | Well just incase you should delete that stuff or we might never be able to talk again<br>Be careful |
| **MV 9/21/2024 3:08 PM:** | I'm so scared [emoji] |

Through investigation, FBI learned that the defendant likely obtained a new cell phone the following day, as he registered a new Android device to his Google account on September 22, 2024.

### 2. Maximum Penalties

The defendant faces a maximum possible penalty of life imprisonment, with a 15-year mandatory minimum term, 5 years up to a lifetime of supervised release, mandatory restitution pursuant to 18 U.S.C. § 2259, and other financial penalties.

### 3. Criminal History

If convicted of these offenses, the defendant faces at least the next 15 years of his life in prison, having never served a prison sentence. His estimated sentencing guideline range calls for a life sentence without acceptance of responsibility. This provides ample incentive to flee.

### 4. Community Ties

The defendant has no ties to the Eastern District of Pennsylvania. The location of the Court in EDPA where the defendant will be required to appear is more than 300 miles away from his residence. The defendant's lack of community ties to EDPA, where he is charged with very serious crimes, significantly increases his risk of flight should he be released pending trial. Furthermore, the defendant knows where the child victim lives.

## B. LEGAL ARGUMENT

Pursuant to 18 U.S.C. § 3142(e)(3)(E), there is a rebuttable presumption in favor of detention for individuals who, like this defendant, are charged with violating 18 U.S.C. §§ 2251(a), 2252(a), 2423(a), and 2422(b). This presumption is based in part on the Congressional determination that "sex offenders and child molesters are four times more likely than other violent criminals to recommit their crimes." *Comments of Chairman Lemar Smith*, H.R. Rep. 5422; *see also United States v. Farris*, 2008 WL 1944131 (W.D. Pa. 2008).

The dangers surrounding these types of offenses are widely recognized. *See McKune v. Lile*, 536 U.S. 24, 33 (2002) (emphasizing Department of Justice and Federal Bureau of Investigation statistics reflecting substantially increased likelihood of repeat arrests for sex

offenders); *United States v. Pugh*, 515 F.3d 1179, 1199 (11th Cir. 2008) (discussing influence of sexual offender recidivism in passage of various provisions in the PROTECT Act); *Report of Chairman Sensenbrenner*, H.R. Rep. 107-527, on amendment of 18 U.S.C. § 3583 (expressing congressional determination that "sex offenders and child molesters are four times more likely than other violent criminals to recommit their crimes" and referencing studies and findings documenting (1) a significantly higher rate of recidivism among sexual predators, (2) the number of undetected offenses which such individuals actually commit and (3) the psychological impact such offenses have on the victims); *Doe v. Bredesen*, 507 F.3d 998, 1006 (6th Cir. 2007) (noting the legislative findings in numerous states passing sex offender registration systems reflecting the "undisputed high risk of recidivism" by such sex offenders). A defendant may rebut the presumption of pretrial detention by presenting "some credible evidence" that he will not pose a threat to the community upon his release. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986), and the defendant has clearly failed to do so in this case.

The defendant poses a real and significant danger to children in the community, and there is no condition or combination of conditions that could assure the safety of the community if he is released. Even a condition that prohibits the defendant from having contact with minor children would not adequately assure the safety of children in the community if the defendant is released because there is no way to effectively monitor his compliance with such a condition. At age 38, the defendant sexually exploited a 14-year-old child for weeks. The defendant did not stop at online victimization, which, on its own is egregious and would warrant his pretrial detention. Instead, he traveled 300 miles across the state to meet the child and transported her across state lines to a hotel to have sex. There is simply no way to adequately monitor this defendant should he be released, nor any way to ensure compliance with any conditions this Court may impose, that could eradicate

the danger he poses to children. Only a 24-hour watch by the Bureau of Prisons can ensure the safety of the community and children, in particular, from the defendant.

Furthermore, there is simply no way to effectively monitor this defendant's online access to children, for the following reasons:

(1) Access to the Internet is possible through desktop and laptop computers, cell phones, iPods, iPads, and even gaming devices. There is no way to prevent the defendant from purchasing or using an Internet accessible device without the knowledge of Pretrial Services.

(2) Storage devices can range in size, down to the size of a postage stamp, making it impossible for a Pretrial Services officer to locate. There is no way to prevent the defendant from obtaining any storage medium, and no amount of supervision that would detect it in his home or elsewhere.

(3) There is no way to monitor whether the defendant will access the Internet – and child pornography and/or communication with minors about sexual activity – using a public library's computers, using family members' or friends' electronic equipment, or Internet access at any other location, given that there is free WiFi access from any number of public places.

(4) Even if this Court were to order that computer monitoring software be installed on the defendant's home computer(s), there would be no way to detect if he were to subvert the computer monitoring software by simply inserting a device with its own operating system into the computer being monitored, thereby bypassing the monitoring software altogether. The defendant's activities would be completely undetected, and the Pretrial Services officer – and this Court – would instead be issued a report that the defendant is in "compliance."

It is difficult to conceive of any supervision that would detect the defendant's criminal activities. Pretrial Services is limited to inspection of items that are in plain view of the officers and is not permitted to seize electronic evidence. The fact that the defendant has no ties to EDPA further hinders the ability of Pretrial to supervise him because he would likely be supervised outside of the district in which he is charged. "The ubiquitous presence of the internet and the all-encompassing nature of the information it contains are too obvious to require extensive citation or discussion." *United States v. Schenberger*, 498 F.Supp.2d 738, 745 (D. N.J. 2007) ("This Court is

not persuaded that meaningful assurances can be given that defendant's access to the internet can be stopped. Even if the defendant could somehow be prohibited from viewing or exchanging images of child pornography, it is difficult to conceive of measures that could confidently assure that defendant would not communicate with others and encourage the distribution of child pornography and related illicit activities.”); *see also United States v. Voelker*, 489 F.3d 139, 145 (3d Cir. 2007) (finding detention appropriate for a defendant charged with distributing and receiving child pornography, based on the dangers associated with child pornography offenses and the difficulty to effectively monitor understanding the accessibility of the Internet). Accordingly, the government requests that the defendant remain in custody pending trial.

Moreover, prison is a certainty for this defendant if convicted of these offenses, for which the supporting evidence is strong-- he faces a mandatory minimum of 15 years’ imprisonment, and sentencing guidelines that will call for a significantly higher sentence upon conviction. The defendant’s lack of ties to the Eastern District of Pennsylvania significantly increases his risk of flight. In addition, the prospect of this lengthy prison sentence makes the defendant even more of a danger to children in the community, knowing that any release on bail may be the last time he is ever free.

**C. CONCLUSION**

For all of these reasons, the defendant cannot rebut the presumption under 18 U.S.C. § 3142(f)(1)(E) that no condition or combination of conditions will reasonably assure his presence for trial or the safety of the community.

WHEREFORE, the government respectfully requests the Court to detain this defendant prior to trial.

Respectfully submitted,

TROY RIVETTI
United States Attorney

*/s/ Adam Barr*
ADAM BARR
Assistant United States Attorney
PA ID No. 312286

## CERTIFICATE OF SERVICE

I certify that on this date, I filed the foregoing Motion for Pretrial Detention via the Court's CM/ECF System, thereby making it available for viewing and downloading for all parties to the case.

Dated: October 14, 2026

*/s/ Adam J. Barr*
ADAM J. BARR
Assistant United States Attorney
PA ID No. 312286